| | |
|---|---|
| UNITED STATES DISTRICT COURT FOR THE<br>SOUTHERN DISTRICT OF NEW YORK | |
| PROSPECT CAPITAL CORPORATION,<br><br>                                                            Plaintiff,<br><br>        - *against* -<br><br>SILICON VALLEY BANK,<br><br>                                                            Defendant. | Case No. 21-cv-314 |

## COMPLAINT

Plaintiff Prospect Capital Corporation ("Prospect"), by its undersigned counsel, for its complaint against Silicon Valley Bank ("SVB") alleges as follows:

1. This is an action to recover amounts due and owing under the Debt Subordination Agreement by SVB in favor of Prospect and other senior lenders[1], dated as of December 23, 2014 (the "Agreement"), attached hereto as Exhibit A. All undefined capitalized terms used herein shall have the meanings given in the Subordination Agreement.

## PARTIES

2. Plaintiff Prospect is a Maryland corporation with its principal place of business at 10 East 40th Street, 42nd Floor, New York, New York, where it is engaged in the business of investing in middle-market companies.

3. Defendant SVB is a California corporation with its principal place of business at 3003 Tasman Drive, Santa Clara, California, 95054.

---

[1] Other than Prospect, all lenders who were party to the Agreement have been repaid in full by the Borrower, defined below.

## JURISDICTION, VENUE AND CHOICE OF LAW

4. Pursuant to the Agreement, SVB "irrevocably and unconditionally submits, for itself and its property, to the exclusive jurisdiction of any New York State Court or Federal Court of the United States of America sitting in the Borough of Manhattan in the State of New York". (Agmt. ¶ 11(a) (capitalization altered).) SVB further "irrevocably and unconditionally waives, to the fullest extent it may legally and effectively do so, any objection that it may now or hereafter have to the laying of venue of any suit, action or proceeding arising out of or relating to this agreement in any state or federal court sitting in the Borough of Manhattan in the State of New York . . . [and] irrevocably waives, to the fullest extent permitted by law, the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court." (Agmt. ¶ 11(b) (capitalization altered).)

5. The parties also agreed that the "Agreement shall be governed by and shall be construed and enforced in accordance with the internal laws of the State of New York, without regard to conflicts of law principles." (Agmt. ¶ 16.)

6. This Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1332 because Plaintiff and Defendant are citizens of different states and the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.

## FACTUAL BACKGROUND

7. On or about February 19, 2014, Prospect and certain other lenders provided senior secured term loans to a borrower (the "Borrower"), totaling approximately $54.7 million dollars.

8. On or about December 23, 2014, in connection with a loan made by SVB to the indirect parent company of the Borrower totaling approximately $12 million dollars, SVB and Prospect negotiated and executed the Agreement in order to establish the contractual subordination

terms, including payment subordination, binding on SVB's junior subordinated debt in favor of Prospect's senior secured term loans.

9. The Agreement is a payment subordination intercreditor agreement by SVB, as junior subordinated lender, in favor of Prospect, as senior secured lender, wherein SVB agreed that, subject to very limited exceptions not relevant here, no payments outside of ordinary interest and principal payments may be made with respect to SVB's junior subordinated debt so long as any portion of Prospect's senior secured debt is outstanding.

10. The Agreement contained typical market-standard payment subordination provisions for intercreditor agreements of this type, specifically:

   a. Other than ordinary payments of interest and principal, no payment may be made to SVB "whether for principal, interest, or otherwise, except with [Prospect]'s prior written consent" (Agmt. ¶ 1); and

   b. If SVB "shall receive any payment of any [of SVB's debt] . . . whether or not [SVB] has knowledge that such party is not entitled to make such payment, [SVB] shall *promptly* account for such payment and upon . . . [Prospect]'s demand pay over such payment to [Prospect]" (Agmt. ¶ 5 (emphasis added)).

11. Without the knowledge or consent of Prospect and in contravention of the express subordination requirements of the Agreement, SVB's junior subordinated loan was repaid in full on or about December 20, 2017. As a result of such forbidden repayment, SVB received approximately $12 million dollars on or about December 20, 2017.

12. In October 2018, the Borrower informed Prospect that SVB's junior subordinated loan was repaid in full in December 2017 in contravention of the Agreement.

13. At that time, the Borrower was exploring various options with its lenders, including Prospect, to enable the potential for such lenders to be paid in full, including but not limited to: (a) investment of new cash by the Borrower's equity owners; (b) converting some debt into equity;

and/or (c) a sale of the Borrower at a price expected to fully repay Prospect and the other lenders to the Borrower.

14. The Borrower continued to make ongoing debt service payments on its loans and continued to cooperate with the senior secured lenders in pursuing refinancing and other exit strategies, including retaining a financial advisor to sell the Borrower. At the time, the Borrower and the financial advisor advised Prospect and the other senior secured lenders to the Borrower that the Borrower and the financial advisor expected the aggregate proceeds from such sale would be more than sufficient to repay Prospect and the other senior secured lenders to the Borrower in full.

15. Eventually, instead of a single transaction, the Borrower sold its assets in separate transactions to two buyers in order to maximize sale proceeds and recovery to the Borrower's senior secured lenders. The last and final sale of the Borrower's assets closed on or about December 22, 2020, leaving the Borrower with virtually no assets. The Borrower is in the process of liquidating and transferring operations to its buyers. Prospect is now the only remaining senior secured lender to the Borrower, which owes Prospect $14,958,612.78, as of January 8, 2021, on its senior secured term loan to the Borrower (with such debt balance growing at a rate of 14% per annum, compounded quarterly). Any funds from the Borrower's liquidation are not expected to be material.

16. It is now clear that the Borrower will no longer be able to make significant (if any) further payments on Prospect's senior secured term loan, let alone repay Prospect's senior secured debt in full, whereas SVB's junior subordinated loan was repaid <u>in full</u> in direct contravention of the payment subordination requirements applicable to SVB's junior subordinated debt. Accordingly, Prospect sent a demand notice, dated December 23, 2020, attached hereto as <u>Exhibit</u>

B, to SVB pursuant to the Agreement, demanding that SVB, in accordance with the clear requirements of Paragraph 5 of the Agreement, turn over the entire amount of the forbidden repayment of SVB's junior subordinated debt to Prospect, to be applied to repayment of Prospect's senior secured debt.

17. SVB has failed to turn over any (let alone the entire amount) of the forbidden repayment of SVB's junior subordinated debt to Prospect.

## COUNT I
## Breach of Paragraph 1 of the Agreement

18. Prospect restates and incorporates the allegations made in each of the preceding paragraphs herein.

19. Pursuant to Paragraph 1 of the Agreement, other than ordinary payments of interest and principal, no payment may be made to SVB "whether for principal, interest, or otherwise, except with [Prospect]'s prior written consent." (Agmt. ¶ 1.) SVB received a full repayment of its junior subordinated loan in December 2017 prior to repayment in full of Prospect's senior secured term loans, in contravention of Paragraph 1 of the Agreement.

20. Prospect has performed its obligations under the Agreement.

21. Accordingly, Prospect is entitled to a money judgment against SVB, in the full amount of the forbidden repayment received by SVB, totaling approximately $12 million dollars.

22. In addition to the amounts above, under New York law, Prospect is entitled to pre-judgment interest at the rate of nine percent per annum. *See* New York Civil Practice Law and Rules 5001 and 5004.

## COUNT II
### Breach of Paragraph 5 of the Agreement

23. Prospect restates and incorporates the allegations made in each of the preceding paragraphs herein.

24. Pursuant to Paragraph 5 of the Agreement, if SVB "shall receive any payment of any [of SVB's debt] . . . whether or not [SVB] has knowledge that such party is not entitled to make such payment, [SVB] shall promptly account for such payment and upon . . . [Prospect]'s demand pay over such payment to [Prospect]."  (Agmt. ¶ 5.)

25. Prospect sent a demand notice, dated December 23, 2020, to SVB pursuant to the Agreement, demanding that SVB turn over the entire amount of the forbidden repayment of SVB's junior subordinated debt to Prospect, to be applied to repayment of Prospect's senior secured debt.

26. SVB has failed to turn over any (let alone the entire amount) of the forbidden repayment of SVB's junior subordinated debt to Prospect and therefore breached Paragraph 5 of the Agreement.

27. Accordingly, Prospect is entitled to a money judgment against SVB, in the full amount of the forbidden repayment received by SVB, totaling approximately $12 million dollars.

28. In addition to the amounts above, under New York law, Prospect is entitled to pre-judgment interest at the rate of nine percent per annum.  *See* New York Civil Practice Law and Rules 5001 and 5004.

**WHEREFORE**, Plaintiff Prospect respectfully requests:

1. judgment against SVB for breach of Paragraphs 1 and 5 of the Agreement in the full amount of the forbidden repayment received by SVB, totaling approximately $12 million dollars;

2.	pre-judgment and post-judgment interest against SVB for the amounts due and owing under the Agreement at the statutory rate of nine percent per annum; and

3.	such other and further relief as the Court may deem just and proper, together with the costs and expenses of this action.

Dated: New York, New York
       January 13, 2021

                                        By    /s/ Abraham Shaw
                                        Abraham Shaw, Esq.
                                        Adam Burton, Esq.
                                        10 East 40th Street, 45th floor
                                        New York, New York 10016
                                        (646) 845-6061
                                        ashaw@prospectcap.com
                                        aburton@prospectcap.com
                                        *Attorneys for Plaintiff Prospect Capital Corporation*